[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-13583
Non-Argument Calendar
_____

D.C. Docket No. 2:15-cv-00614-TFM


PATRICIA WOOD LAW,

Plaintiff-Appellant,

versus

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

Defendant-Appellee.


_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(March 7, 2017)

Before HULL, WILSON and JILL PRYOR, Circuit Judges.

PER CURIAM:

Patricia Wood Law appeals from the district court's decision to affirm the Commissioner of Social Security's denial of her applications for a period of disability and disability insurance benefits. On appeal, Law contends that the administrative law judge ("ALJ") failed to give adequate consideration to her testimony and medical evidence concerning her right shoulder condition. Because the ALJ made no error, we affirm.

## I.    Factual Background

Ms. Law applied for a period of disability and disability insurance benefits with the Social Security Administration, claiming she had become disabled on January 24, 2012. After the Commissioner denied her applications, Ms. Law requested and received a hearing before an ALJ.

### A.

The hearing before the ALJ focused on the extent of Ms. Law's injuries and their effect on whether Ms. Law could perform during the relevant time period, which was between her alleged onset date in January 2012 and her date last insured in December 2012. With respect to her injuries, Ms. Law testified that because of her diabetes, osteoarthritis, and osteoporosis, she experienced great pain, including in her back, hip, and right shoulder.[1]

---

[1] Ms. Law also testified to suffering from memory loss, alopecia, and varicose veins.

Ms. Law described to the ALJ how she experienced severe pain in her back and hip four days per week. She explained that this pain was aggravated by bending over, sitting straight too long, standing too long, or incoming bad weather. Because of the pain, she testified that she could only stand for thirty minutes, sit for thirty minutes to an hour, and walk for an hour before needing to take the pressure off her hip. She took over-the-counter pain relievers and would lay down with her legs elevated for three to four hours a day to alleviate the pain. In addition, Ms. Law testified that walking on the treadmill at the gym made her feel better.

Ms. Law also testified about her shoulder. She explained that her shoulder began to hurt in 2009 and that in 2012 she was receiving cortisone shots for the pain. Ms. Law asserted that these shots would provide relief for a day or two, but the pain would return. She testified that because of her shoulder affliction, it hurt to lift more than ten pounds and that her right arm was more limited than her left.

Ms. Law had not worked since 2007 when the last client of her in-home health care business passed away. Her business, which she had operated for twenty years, required her to lift, turn, and pull patients to bath them and move them between their beds, wheelchairs, and transportation. She testified that she could no longer perform this work. But she acknowledged that during the relevant

time period she could keep her house straightened, cook, shop for groceries, and attend church.

Ms. Law provided testimony and medical records about her health conditions before her alleged onset date. She explained that in September 2011 she was diagnosed with arthritis and foot troubles by Dr. Jakes. Dr. Jake's records show that Ms. Law complained of pain in her neck, back, shoulders, wrists, hands, knees, and toes. A physical examination found full range of motion in her joints, and the doctor diagnosed her with mild osteoarthritis and Morton's neuroma. Ms. Law refused prescription medication for her joint pain, so the doctor recommended she continue taking Tylenol and glucosamine. Dr. Jakes also recommended physical therapy for her neck and back pain and orthotics for her feet; Ms. Law did neither because they were too expensive.

The medical records Ms. Law submitted to the ALJ show that in 2012 Ms. Law occasionally, but not always, reported pain to her physicians. That year, Ms. Law saw her primary care physician, Dr. Knapp, for various problems including pain in her neck and back, as well as her right hip, right wrist, and right shoulder. In January, three days after her alleged onset date, she visited Dr. Knapp complaining about her back, but denying any muscle or joint pain. At her follow up appointment in April, Ms. Law reported pain in her right shoulder and that she could not remember hurting herself. Dr. Knapp gave a physical examination in

4

which Ms. Law's condition appeared consistent with her age.  He diagnosed her right shoulder with osteoarthrosis and administered a cortisone shot.  Six months later, Ms. Law complained of muscle and joint pain, weakness, and fatigue.  Dr. Knapp's nurse practitioner assessed the cause of these symptoms to be Ms. Law's high cholesterol and diabetes.  In November, Ms. Law returned to discuss her worsening diabetes and admitted to not taking her medicine every day.  At this visit, Ms. Law denied any muscle or joint pain.

Ms. Law also submitted medical evidence from after December 31, 2012, her date last insured.  These records reflect that in April 2013, she denied experiencing muscle or joint pain to Dr. Knapp.  Just over a year later, in May 2014, Ms. Law saw Dr. Walcott for right shoulder and arm pain.  She reported to Dr. Walcott that she had experienced "right shoulder and arm pain for probably the last couple of years getting worse."  After an MRI, Dr. Walcott diagnosed Ms. Law with a torn rotator cuff.  He recommended that Ms. Law receive shoulder injections and surgery.  Ms. Law received one shoulder injection.  Although she indicated that she would schedule the surgery, there is no evidence in the record that the surgery occurred.

In addition to Ms. Law's testimony and medical records, the ALJ heard testimony from Renee Smith, a vocational expert ("VE"), about the availability of jobs for Ms. Law.  The ALJ posed a hypothetical to the VE about an individual

with Ms. Law's age, education, and work background.  This hypothetical person could move 50 pounds occasionally and 25 pounds frequently, but was limited by the right upper extremity.  The person could no more than on a frequent basis reach laterally or out from the body on the right, and could only occasionally push, pull, and reach overhead on the right.  The VE testified that this hypothetical person could not perform Ms. Law's past relevant work as a caregiver, but could function as a hospital cleaner, broom bundler, or crate liner.

## B.

After the hearing, the ALJ issued a decision finding Ms. Law was not disabled in 2012.  The ALJ's decision followed the five step process detailed in the social security regulations.  *See* 20 C.F.R. § 404.1520(a)(4).  First, the ALJ found that Ms. Law had not engaged in substantial gainful activity during the period from her alleged onset date through her date last insured.  Second, the ALJ found that Ms. Law had the following severe impairments: mild degenerative disc disease and scoliosis, diabetes mellitus, osteoarthritis, and hypertension.  The ALJ found other nonsevere impairments, including osteopenia, hyperlipidemia, a history of tobacco abuse with lung nodules, and complaints of chest pain.  Third, the ALJ found that Ms. Law did not have an impairment, or combination of impairments, that met or medically equaled the severity of one listed in Appendix 1.[2]  The ALJ stated that

---

[2] 20 C.F.R. Part 404, Subpart P, Appendix 1.

6

the combined effect of all Ms. Law's impairments, regardless of severity, was taken into account in determining her residual functional capacity ("RFC"). Fourth, the ALJ found that Ms. Law had the RFC to perform a range of medium work and that she could not perform any past relevant work. With respect to her RFC, the ALJ concluded that Ms. Law could lift and carry up to 50 pounds occasionally and 25 pounds frequently. Within these exertional limitations, the ALJ determined that Ms. Law could only occasionally push and pull with her right upper extremity, only occasionally reach overhead, and no more than frequently reach laterally out from the right side of her body.

In reaching this RFC determination, the ALJ considered Ms. Law's symptoms and the extent to which the symptoms reasonably could be accepted as consistent with the objective medical evidence and other evidence. The ALJ first noted that Ms. Law stopped working because her client died and that she claimed her condition did not become severe enough to keep her from working for roughly five years. The ALJ considered Dr. Jake's and Dr. Knapp's records. More specifically, the ALJ discussed Dr. Knapp's diagnosis of osteoarthrosis of the right shoulder and its treatment by cortisone shot. Although Ms. Law testified that she was totally disabled during 2012, the ALJ was surprised to find no indication of restrictions placed on her by any of her physicians. Based on this discrepancy, the ALJ found Ms. Law's testimony to be not entirely credible, even though her

impairments "could possibly be expected to cause to some degree the symptoms alleged."

The ALJ then evaluated the intensity, persistence, and limiting effects of Ms. Law's symptoms to determine the extent to which they limit her functioning. Here the ALJ found Ms. Law had failed to present evidence showing she was incapable of performing medium work. He considered that she lived alone, took care of her house and herself, shopped for groceries, and regularly attended church. Further, the ALJ noted that, according to the medical evidence, Ms. Law's treatment in 2012 was "very limited and essentially routine and conservative in nature with no evidence of significant pain management efforts." The ALJ considered the lone cortisone shot and the worsening of her diabetes, but held that the records overall showed "improvement and good function in daily life." The ALJ concluded the RFC analysis by finding that Ms. Law's impairments were "not as limiting as alleged."

Fifth, the ALJ found that Ms. Law had acquired skills at her previous job that were transferable to other jobs existing in significant numbers in the national economy. Based on the VE's testimony, the ALJ found that a person with Ms. Law's background and RFC could perform the work of hospital cleaner, broom bundler, and crate liner. Thus, the ALJ concluded that Ms. Law was not disabled at any time from January 24, 2012 to December 31, 2012.

C.

Ms. Law appealed the ALJ's decision to the Social Security Administration Appeals Council, which found no reason to review and denied her request.[3] Ms. Law then filed an action in district court seeking review of the ALJ's decision. A magistrate judge affirmed the ALJ's decision as supported by substantial evidence. This appeal followed.

## II.    Standard of Review

Our review is limited in social security cases. *See* 42 U.S.C. § 405(g). "We review the Commissioner's decision to determine if it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (internal quotation marks omitted). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). We may not reweigh the evidence or decide facts for ourselves—the Commissioner's decision deserves deference "even if the proof preponderates against it." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (internal quotation marks omitted). We review an ALJ's credibility determination concerning a claimant's complaints of pain and other subjective symptoms for

---

[3] Ms. Law submitted to the Appeals Council new medical evidence from Dr. Knapp, dated September 18, 2013. The Appeals Council found it irrelevant because her date last insured was in December 2012. Ms. Law raises no argument on appeal that the Appeals Council erred in refusing to consider this evidence, so we do not address this medical evidence further.

substantial evidence supporting the determination. *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992).

### III.    Legal Analysis

Ms. Law's appeal argues that the ALJ's decision is unsupported by substantial evidence for three reasons.  First, she argues that the ALJ erred by omitting any specific findings relating to the severity of Ms. Law's right shoulder condition.  Second, she argues that the ALJ erred by forgoing any reference to Ms. Law's testimony about her right shoulder.  Third, she argues that the ALJ erred by ignoring the medical evidence provided by Dr. Walcott.  We disagree.

### A.

Ms. Law argues that the ALJ erred by failing to make specific findings about the severity of her right shoulder condition.  We understand this to be an argument about the sufficiency of the impairment findings in step two of the ALJ's sequential evaluation.  We have held that step two acts as a filter: "the ALJ must determine if the claimant has *any* severe impairment." *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (emphasis added).  Here the ALJ found Ms. Law had several severe impairments, including osteoarthritis.[4]  Because step two requires nothing more, we discern no error.

---

[4] In the ALJ's RFC determination, he explicitly considered Dr. Knapp's diagnosis of osteoarthrosis of the shoulder.  Thus, the ALJ considered Ms. Law's right shoulder condition a severe impairment.

B.

In a related argument, Ms. Law asserts that the ALJ failed to adequately consider her testimony regarding her right shoulder.  This argument is without merit.  The ALJ is not required to explicitly mention every piece of evidence so long as the decision considers the claimant's medical condition as a whole.  *See Mitchell v. Comm'r Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).  In making the RFC determination, the ALJ considered Ms. Law's right shoulder.  The ALJ discussed her limited ability to push, pull, and reach overhead and laterally with her "right upper extremity."  The ALJ also mentioned the medical evidence from Dr. Knapp concerning her cortisone injection in 2012 when finding Ms. Law's testimony about her pain during that period less than credible.  Because the ALJ took account of Ms. Law's shoulder in his assessment of her medical condition as a whole, there is no reversible error even if the ALJ never explicitly mentioned her testimony about her shoulder.

C.

Ms. Law also argues that the ALJ erred in omitting references to Dr. Walcott's medical records, focusing on the note in the doctor's file that Ms. Law had shoulder pain for "probably the last couple of years getting worse."  A claimant is eligible for benefits "where she demonstrates disability on or before the last date for which she was insured."  *Moore v. Barnhart*, 405 F.3d 1208, 1211

11

(11th Cir. 2005). Ms. Law's date last insured was December 31, 2012. She first visited Dr. Walcott eighteen months later in the summer of 2014. Dr. Walcott's treatment of Ms. Law in 2014 does not establish whether she was disabled as of December 31, 2012.

Though Ms. Law did report to Dr. Walcott that her shoulder had been afflicted for "probably the last couple of years getting worse," Dr. Knapp's records from 2012 belie this assertion. As noted by the ALJ, Ms. Law complained to her physicians of right shoulder pain only once during 2012. Evidence of right shoulder pain does not appear again in Dr. Knapp's records of Ms. Law's multiple visits during the relevant time period. As such, there is substantial evidence to support the ALJ's assessment of Ms. Law's RFC.

Ms. Law further contends that the ALJ's omission of Dr. Walcott's diagnosis of a torn rotator cuff is reversible error, citing to this Court's holding in *Vega v. Commissioner of Social Security*, 265 F.3d 1214 (11th Cir. 2001). In *Vega* we recognized that "remands are required when an ALJ fails to consider properly a claimant's condition despite evidence in the record of the diagnosis." 265 F.3d at 1219-20. However, the ALJ in that case "ignored the symptoms" of Ms. Vega's chronic fatigue syndrome. *Id.* Ms. Law's shoulder symptoms, by contrast, were expressly considered multiple times in the ALJ's RFC determination.[5] Thus, Ms.

---

[5] Ms. Law concedes this point in her brief before this Court.

12

Law's reliance on *Vega* is unavailing, and the ALJ did not commit reversible error by failing to reference Dr. Walcott in his decision.

## IV.    Conclusion

For the reasons set forth above, the district court's judgment is affirmed.

**AFFIRMED.**