**[PUBLISH]**

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPT. 20, 2001
THOMAS K. KAHN
CLERK

No. 00-14934

D. C. Docket No. 98-00293-CV-2-FTM-29D


IRIS VEGA,

                                                    Plaintiff-Appellant,

                              versus

COMMISSIONER OF SOCIAL SECURITY,

                                                    Defendant-Appellee.


Appeal from the United States District Court
for the Middle District of Florida

(September 20, 2001)


Before TJOFLAT, DUBINA and DUHE*, Circuit Judges.

_____
*Honorable John M. Duhe, Jr., U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

DUBINA, Circuit Judge:

Appellant, Iris Vega ("Vega"), appeals the district court's order affirming the Commissioner of Social Security's ("the Commissioner") denial of disability insurance benefits.  We reverse.

## I.  BACKGROUND

A. *Facts*

The evidence presented at an administrative hearing before an Administrative Law Judge ("ALJ") revealed the following facts.  At the time of the hearing, Vega was a 58 year-old woman who completed the tenth grade in school.  She worked as a secretary at a cabinet company and as a drug store clerk.   Vega fell and injured herself in 1992 and received unemployment compensation from December 1992 through May 1993.  Vega testified that due to her fall, she suffered from severe pain in her shoulder, a burning sensation in her neck, severe headaches, and pain radiating down her left leg.  She had constant pain in both hands; she suffered headaches at least 5 times a week; she had dizziness and nausea; and she stated that she could not stand or sit for more than 10-15 minutes and that she used a cane for walking.  Vega testified that since her accident, she suffers from depression and has problems with her memory, concentration, and her ability to read and do math.  She testified that she was hospitalized twice between

1992 and 1995, and that she sleeps 20 to 22 hours a day. She also testified that a doctor diagnosed her with Epstein-Barr virus.

A vocational expert ("VE") testified that if Vega's testimony was accurate, then she could not perform any work, including her past work. The VE also testified, however, that if Vega could perform light work, had moderate pain and no hand restrictions, suffered from depression of a moderate nature, had some occasional postural limitations, and had moderate limitations on her ability to complete a normal workday, then she could still perform her past work. In response to Vega's attorney's questions, the VE testified that if Vega's headaches were severe, then she could not do her past work. The VE further testified that if the hypothetical was altered to include major depression with marked limitations of daily activities, then Vega would be unable to work.

Vega's medical records demonstrate that after her fall, she had no fracture or spondylolisthesis in her lumbar region and there was no fracture or joint effusion in her left knee. However, there was a narrowing of the C5-6 intervertebral disc space, but no fracture or dislocation. A diagnostic radiologist diagnosed Vega with degenerative disc disease at C5-6 and C6-7. A cervical spine MRI revealed no evidence of significant pathology at any level.

Dr. Jonathan Kob ("Dr. Kob") treated Vega after her accident. He diagnosed her with severe cervical strain with possible herniated pulposa and cephalalgia. He stated that her prognosis was good and he released her to return to work on a part-time basis. Dr. Kob did restrict Vega to light-duty work with restrictions on heavy lifting and rapid movement of the neck. Subsequently, following an examination in June 1996, Dr. Kob concluded that Vega was totally disabled from substantial work. He diagnosed Vega with chronic fatigue syndrome ("CFS"), hormonal imbalance, depression, and cephalalgia.

Dr. George Sypert ("Dr. Sypert"), a neurologist, examined Vega in October 1994 and concluded that no objective abnormalities were evident other than diffuse tenderness of her lumbar spine and cervical spine. He diagnosed Vega with myofascial strain syndrome, greater occipital neuralgia, secondary to chronic neck muscle spasm. Dr. Sypert concluded that Vega had a seven percent partial impairment of her person.

In August 1993, Vega was admitted to the hospital, and Dr. Christopher Yuvienco ("Dr. Yuvienco") diagnosed her with chronic fatigue, recurrent cystitis, and migraine headaches. Dr. Yuvienco's office notes for August 1993 mention "CFS," and his notes for October 1993 indicate that Vega's CFS was better. His notes also indicate that Vega complained of fatigue and sleepiness numerous times.

He concluded that Vega was totally disabled from substantial work. He also submitted a form for CFS, stating that Vega's CFS was severe, and it significantly limited her ability to walk, stand, sit, lift, and understand instructions.

Dr. J. Green ("Dr. Green") performed a residual physical functional capacity assessment ("RFC") on Vega in February 1995. Dr. Green determined that Vega could occasionally lift 50 pounds, frequently lift 25 pounds, stand, sit, or walk for about six hours in an eight-hour day, and push and/or pull with no restrictions. Dr. Green concluded that Vega had no postural, manipulative, visual, or communicative limitations.

In August 1995, Dr. Ramiah Krishnan ("Dr. Krishnan"), an internist, evaluated Vega and diagnosed her as suffering from myofascial pain involving her back, neck and wrist joints. Dr. Bruce Crowell ("Dr. Crowell"), a psychologist, performed a mental evaluation and diagnosed Vega with major depressive disorder, moderate, without psychotic features. He concluded that Vega had been disabled since April 1993.

Dr. Beverly Barbato, Ph.D. ("Dr. Barbato"), saw Vega on four occasions from May through July 1995 and concluded that Vega had Epstein-Barr virus and a severe depressive disorder due to her injuries. Dr. Barbato concluded that Vega had been disabled since April 1993. In August 1995, Dr. John Hollender ("Dr.

Hollender"), a psychologist, performed a consultive mental RFC assessment and determined that Vega had no significant limitations in understanding, memory, sustained concentration, or persistence. Dr. Hollender determined that Vega had moderate limitations on her ability.

B. *Procedural History*

Vega applied for disability insurance benefits on January 5, 1995, alleging disability since May 1993 based on constant neck and back pain, migraine headaches, numbness in her right hand, CFS, and Epstein-Barr virus. The Commissioner initially denied Vega's application and renewed its denial upon reconsideration. After conducting an administrative hearing, an ALJ issued a decision denying Vega's claim for benefits. Specifically, the ALJ denied Vega's claim for disability benefits because he concluded that she retained the RFC to do her past relevant work as a sales clerk. The ALJ concluded that Vega's RFC was limited to a wide range of light work. He also found that the doctors' assessments were not supported by substantial evidence. The Appeals Council denied review. Thus, the ALJ's decision became the Commissioner's final decision.

Vega then brought an action in federal district court seeking review of the Commissioner's final decision. The district court referred the matter to a magistrate judge who issued a report and recommendation recommending

affirmance of the Commissioner's decision. Vega filed objections to the magistrate judge's report and filed a motion to remand the case based on new evidence. A different magistrate judge issued a second report and recommendation recommending that the motion to remand be denied. After the district court issued a final judgment affirming the magistrate judge's decision, Vega perfected this appeal.

## II. ISSUES

1. Whether the Appeals Council erred in failing to remand this matter to the ALJ on the basis of new and material evidence.

2. Whether the Commissioner failed to consider the effect of Vega's CFS and associated symptoms on her ability to perform her past or other work.

3. Whether the Commissioner failed to accord proper weight to the medical opinions of Vega's treating and examining medical sources.

4. Whether the Commissioner improperly relied upon the VE's responses to incomplete hypothetical questions.

## III. STANDARDS OF REVIEW

This court reviews the Commissioner's findings to determine if they are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 390, 400-01 (1971); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988). This court

reviews *de novo* the district court's determination whether remand to the Commissioner is necessary based on new evidence. *See Milano v. Bowen*, 809 F.2d 763, 765-66 (11th Cir. 1987)*; Caulder v. Bowen*, 791 F.2d 872, 875 (11th Cir. 1986).

## IV. DISCUSSION

### A.

Initially, we note the parties disagree about the jurisdiction of this court to review the issue of whether a remand is necessary in light of new evidence. In *Falge v. Apfel*, 150 F.3d 1320 (11th Cir. 1998), *cert. denied*, 525 U.S. 1124 (1999), this court stated that "42 U.S.C. § 405(g) permits courts to remand a case to the Social Security Administration for consideration of newly discovered evidence." *Id.* at 1323. Thus, this court has jurisdiction to consider whether the case should be remanded for the ALJ to consider the new evidence. Additionally, the parties disagree about the standard of review on this issue. Our case law is clear on the standard of review. *See Milano*, 809 F.2d at 765-66; *see also Caulder*, 791 F.2d at 875. Thus, this court reviews *de novo* the determination regarding remand based on new evidence.

On the merits, Vega argues that the Appeals Council erred by failing to remand her case to the ALJ on the basis of newly submitted evidence that was new and material – the retroactive RFC evaluation submitted by Dr. Yuvienco and the evaluation by Dr. Arpin indicating that Vega had a severe spinal problem. She further asserts that the Appeals Council did not provide any reasoning for denying her appeal, and, thus, there is no indication that it meaningfully considered the new evidence. The Commissioner counters, propounding that Vega cannot demonstrate that the new evidence satisfied the criteria for a remand pursuant to sentence six of 42 U.S.C. § 405(g).

To succeed on her claim that a remand is appropriate, Vega must show that: "(1) there is new, noncumulative evidence; (2) the evidence is 'material,' that is, relevant and probative so there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for the failure to submit the evidence at the administrative level." *Caulder*, 791 F.2d at 877; *see also Falge*, 150 F.3d at 1323. After reviewing the record, we conclude that Vega's newly submitted evidence meets these requirements. Dr. Arpin discovered Vega's herniated disc and performed the corrective surgery in May 1997, after the ALJ rendered his decision in 1996. Accordingly, Dr. Arpin's evaluation is new and non-cumulative. Moreover, Vega meets the third requirement because the

9

discovery of the herniated disc took place after the ALJ's decision. Thus, Vega had good cause for not submitting this evidence to the ALJ. The evidence is material because it contradicts the ALJ's findings and conclusions regarding the severity of Vega's spinal problems. Therefore, in our view, Dr. Arpin's evaluation fulfills the requirements for a remand of this case.

B.

Vega argues that the ALJ erred in failing to make a finding that she suffered from CFS and erred in failing to credit any of her subjective complaints about fatigue, poor concentration, and memory difficulties as reasonably attributable to CFS. The Commissioner responds that the medical records' references to fatigue or the Epstein-Barr virus did not constitute a diagnosis of CFS. The Commissioner also argues that Vega failed to provide any credible medical evidence to support any work-related limitations that may have resulted from CFS. We disagree.

The medical records indicate that Dr. Kob and Dr. Yuvienco both diagnosed Vega with CFS. Dr. Yuvienco specifically diagnosed Vega with CFS on September 20, 1993, October 15, 1993, May 19, 1994, October 3, 1994, December 22, 1994, January 4, 1995, and February 6, 1996. In light of Dr. Yuvienco's diagnosis, the ALJ should have acknowledged it in his evaluation and discussed why he disregarded it. The ALJ focused instead on objective neurological and

orthopaedic evidence.  Moreover, Dr. Yuvienco examined Vega in August 1993, after she had been admitted to the hospital due to sleepiness, fatigue, and weakness.  Although the Commissioner maintains that this is not the equivalent of a diagnosis of CFS, a complete review of Dr. Yuvienco's office notes indicates that he referred to Vega's illness as CFS at that time.

In assessing Vega's RFC, it is clear to us that the ALJ did not properly consider the diagnosis of CFS or evaluate the effect the CFS symptoms had on Vega's ability to work.  This court has not addressed the nature of CFS and the factors to be considered by the ALJ when evaluating a claim of CFS.  Other circuits, however, have remanded cases when the ALJ's conclusions did not fully account for the nature of CFS and its symptoms.  *See, e.g, Reddick v. Chater*, 157 F.3d 715, 722-23 (9th Cir. 1998) (concluding that the ALJ's approach to the materials, testimony, and reports did not fully account for the nature of CFS or its symptoms); *Sarchet v. Chater*, 78 F.3d 305, 307-09 (7th Cir. 1996) (reversing the ALJ because his characterization of the record reflected a misunderstanding of CFS); *Rose v. Shalala*, 34 F.3d 13, 17-19 (1st Cir. 1994) (remanding to the ALJ because evidence compelled finding that claimant suffered from CFS).

We agree with the reasoning of our sister circuits, as well as our prior case law, holding that remands are required when an ALJ fails to consider properly a

11

claimant's condition despite evidence in the record of the diagnosis. *See Marbury v. Sullivan*, 957 F.2d 837, 839-40 (11ᵗʰ Cir. 1992). This holding applies to a claim of CFS when the claimant submits evidence of a CFS diagnosis.

We note that the Social Security Administration recently concluded that there are no specific laboratory findings that are widely accepted as being associated with CFS. According to Social Security Ruling 99-2p, the hallmark symptom of CFS is the presence of clinically evaluated, persistent or relapsing chronic fatigue that is of new or definite onset and cannot be explained by another physical or mental disorder. Moreover, CFS is not the result of ongoing exertion, is not substantially alleviated by rest, and results in substantial reduction in previous levels of occupational, educational, social, or personal activities. There is no test for CFS. The ALJ appears to have rejected CFS as a diagnosis because there is no definite test or specific laboratory findings to support such a diagnosis. This lack of testing, however, does not preclude the diagnosis of CFS. Because the ALJ ignored the symptoms of CFS, as well as Vega's other subjective complaints regarding symptoms related to CFS, the ALJ did not meaningfully conduct an analysis of the effect of CFS on Vega's ability to work.

## C.

Vega contends that the ALJ did not accord proper weight to her treating physicians' opinions. For the reasons stated in part "B" of this opinion, we agree. The medical evidence and Vega's testimony support a diagnosis of CFS; therefore, the ALJ should have credited Drs. Yuvienco and Kob's assessments and findings. Even if their opinions do not warrant controlling weight, the ALJ still erred in failing to give them any weight.

## D.

Vega's final contention is that the ALJ failed to pose a complete hypothetical to the VE because the question failed to mention her headaches, medication history, significant memory or concentration problems, fatigue, wrist pain, and dizziness. Since the hypothetical question was incomplete, Vega argues that the ALJ was not justified in relying on it. The Commissioner responds that the ALJ properly discounted Vega's subjective complaints as being inconsistent with the medical evidence. The Commissioner specifically mentions the ALJ's finding that Vega was able to work in her garden two hours in one day. Vega replies that her ability to garden for two hours in one day is not inconsistent with her inability to perform light work on a sustained basis for eight hours a day, 40 hours a week. Moreover, she contends that gardening aggravated her condition.

13

In our view, the ALJ should have included these complaints in the hypothetical question posed to the VE. Upon remand, the ALJ should pose a more thorough hypothetical question, including Vega's subjective complaints and her symptoms of CFS.

In conclusion, we reverse the district court's judgment in this case and remand for further proceedings consistent with this opinion. After remand, the district court should remand to the ALJ for consideration of Vega's post-hearing evidence and her evidence of CFS. The ALJ should also consider and accord proper weight to the opinions of Vega's treating and examining physicians, and pose a more thorough hypothetical question to the VE.

**REVERSED and REMANDED.**