[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-12305
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 28, 2011
JOHN LEY
CLERK

D.C. Docket No. 1:08-cv-00252-MP-WCS

NANCY CONNER,

Plaintiff-Appellant,

versus

MICHAEL J. ASTRUE,
Commissioner of the Social Security Administration,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(February 28, 2011)

Before BARKETT, MARCUS and KRAVITCH, Circuit Judges.

PER CURIAM:

Nancy Conner appeals the district court's order affirming the

Commissioner's denial of her application for Social Security Disability Insurance and Supplemental Security Income benefits, 42 U.S.C. § 1383(c)(3). The Administrative Law Judge ("ALJ") denied Conner's claim, concluding that Conner's combination of mental impairments did not satisfy the standard for disability. On appeal, Conner argues that the ALJ erred in finding her testimony not credible as to her subjective limitations. Conner further argues that if she had been deemed credible, the ALJ would be required to find that she was disabled, in light of the vocational expert's answer to a hypothetical question that included her subjective limitations. After a review of the record, we affirm.

I.

Conner holds a nursing degree and worked as a nurse in various hospitals until 2005. Conner's responsibilities included caring for patients, working with doctors and staff, and supervising three to five people. Conner claims that she became disabled as a result of anxiety and post-traumatic stress disorder stemming from her son's suicide. She filed her claim for disability in April 2005.

At the administrative hearings,[1] Conner testified that she was working once a week, helping a friend to pack produce for an online store. She said she stopped

_____

[1] The first administrative hearing took place in February 2007. After the ALJ granted Conner's request to undergo an additional psychological evaluation, the hearing was reopened in May 2007 to admit the testimony of Dr. William Benet.

nursing because it was increasingly difficult for her to get along with her co-workers and that she could not handle the stress of her position; however, she admitted that she was not taking any prescribed medication to alleviate the symptoms and that she had not sought mental health care since 1991. Conner also testified that she earned some income by watering plants and pet-sitting and that she occupied her days walking her dogs, visiting a friend, tending to her ten acres of land, taking care of her animals, reading, surfing the internet, and attending church weekly. Conner testified that she had tried to work a couple of jobs, as a cashier and in a clinic, but that she was unsuccessful.

The ALJ also heard the testimony of Dr. William Benet, a licensed psychologist, who conducted an evaluation of Conner in May 2007. Dr. Benet said that persons with Conner's profile "are likely to be tense, irritable, quick-tempered and resent authority and the demands of others," and concluded that she "should be able to perform work-related tasks involving understanding and memory, but is likely to be mildly to moderately impaired in her ability to perform tasks involving sustained concentration and persistence, social interaction, and adaptation." Benet's opinion formed the basis of the ALJ's residual functional capacity assessment of Conner.

The ALJ then heard from a vocational expert about Conner's ability to

3

obtain work.  The ALJ asked the expert whether someone with Conner's skill level and limitations could find work besides nursing; the expert responded that such a person could work as a computer operator, laboratory technician, or film developer.  The ALJ also asked the vocational expert whether, if Conner's testimony about her limitations was credible, someone with Conner's subjective limitations could find work; he replied that she could not.

The ALJ credited Conner's testimony that she was no longer able to work as a nurse because of her personality disorder and adjustment disorder, but discredited her testimony that the persistence and intensity of her social limitations made her unable to perform jobs less stressful than nursing.  The ALJ considered Conner's own testimony about her lifestyle, daily activities, and recent work experience as a fruit packer, convenience store clerk, and nurse's assistant.  The ALJ gave great weight to the opinion of Dr. Benet, that Conner was moderately limited in her social interactions, but could perform a less stressful job than nursing.  The ALJ concluded that Conner was not disabled because although she could not continue her past work, there were other jobs available to someone with her limitations.

In her administrative appeal, Conner argued that, in light of her multiple mental-health impairments, the ALJ erred in rejecting her testimony that she was

4

disabled. The Appeals Council denied Conner's request for review. Conner then filed a complaint in federal court and the district court affirmed the ALJ's ruling. This is Conner's appeal.

## II.

We review the decision of the ALJ when the ALJ denies benefits and the Appellate Council denies review of the ALJ's decision. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). We review *de novo* the district court's decision that substantial evidence supports the Commissioner's decision. *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). Substantial evidence is more than a scintilla, but less than a preponderance. *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987). It is such relevant evidence that a reasonable person would determine adequate to support the conclusion. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). However, we will not reweigh evidence, decide facts anew, or make credibility findings. *Id.*

## III.

An individual who files an application for Social Security Disability and Supplemental Benefits must prove that she is disabled. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *see* 20 C.F.R. § 416.912 (1998). "The Social Security regulations provide a five-step sequential evaluation process for

determining if a claimant has proven that she is disabled." *Jones*, 190 F.3d at 1228. A claimant must first prove that she has not engaged in substantial gainful activity. *Id.* Second, she must prove that she has a severe impairment or combination of impairments. *Id.* "If at the third step she proves that her impairment or combination of impairments meets or equals listed impairment, she is automatically found disabled regardless of age, education, or work experience." *Id.* "If she cannot prevail . . . , she [proceeds] to the fourth step where she must prove that she is unable to perform her past relevant work." *Id.* "At the fifth step, the burden shifts to the Commissioner to determine if there is other work available in significant numbers in the national economy that the claimant is able to perform." *Id.* "If the Commissioner can demonstrate that there are jobs the claimant can perform, the claimant must prove she is unable to perform those jobs in order to be found disabled." *Id.*

A claimant bears the initial burden of establishing the existence of a qualifying disability. *Moore*, 405 F.3d at 1211. We apply a three-part standard when a claimant seeks to establish disability through her own testimony regarding pain or other subjective symptoms. This standard requires:

> (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical

condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). A claimant's subjective testimony is itself sufficient to support a finding of disability if it is supported by medical evidence and satisfies the pain standard. *Foote v. Chater,* 67 F.3d 1553, 1561 (11th Cir. 1995).

Once an impairment has been established, the ALJ should consider the evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms. *Id.* A claimant's daily activities may be considered in evaluating and discrediting a claimant's subjective complaints. *See Harwell v. Heckler*, 735 F.2d 1292, 1293 (11th Cir. 1984). If an ALJ decides to discredit a claimant's subjective testimony, the ALJ must clearly articulate adequate reasons for discrediting the claimant's allegations of disabling symptoms. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The regulations require the ALJ to give specific reasons if he does not credit the claimant's testimony. *Hale*, 831 F.2d at 1012. A reviewing court will not disturb a clearly articulated credibility finding without substantial supporting evidence in the record. *Id*.

Here, the ALJ, considering Dr. Benet's testimony in addition to Conner's,

concluded that her mental impairments affected her ability to interact with her co-workers and were thus severe enough to interfere with her ability to function in the workplace. But the ALJ also concluded that these limitations did not render Conner disabled. The ALJ's conclusion is supported by substantial evidence, including Conner's own testimony, her medical records and mental evaluations, and the testimony of a vocational expert. The ALJ adopted the medical opinion of Conner's limitations that was most favorable to her claim of disability and credited her claims that she was no longer able to function as a nurse. Additionally, the ALJ clearly articulated the reasoning for discrediting Conner's testimony regarding the intensity, persistence, and limiting effects of her symptoms, particularly in light of her testimony about her daily activities.

The ALJ also posed a proper hypothetical to the vocational expert, comprising all of Conner's impairments, relevant history, and moderate limitations. *See Vega v. Comm. of Soc. Sec.*, 265 F.3d 1214, 1220 (11th Cir. 2001). The vocational expert testified that although Conner was no longer able to practice nursing, she was able to perform a number of jobs in the national economy. Accordingly, the Commissioner concluded by substantial evidence that, despite her severe impairments, Conner was not disabled because she retained the residual functional capacity to perform jobs other than nursing. Conner did not

offer any evidence to rebut this finding. *Hale,* 831 F.2d at 1012. Accordingly, we affirm the Commissioner's decision to deny Conner's claim for benefits.

**AFFIRMED.**