[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-16166
Non-Argument Calendar
_____

D.C. Docket No. 6:11-cv-01320-KRS

CHARLES MONROE TIMMONS,

                                                    Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

                                                    Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(July 9, 2013)

Before TJOFLAT, HULL and PRYOR, Circuit Judges.

PER CURIAM:

Charles Timmons appeals the magistrate judge's order affirming the Social Security Administration's denial of his applications for disability insurance benefits, 42 U.S.C. § 405(g), and supplemental security income, 42 U.S.C. § 1383(c)(3). After review, we affirm.

## I.  BACKGROUND

### A.    Administrative Hearing

In his applications for benefits, Timmons alleged that he was unable to work as of April 30, 2006, due to his bipolar disorder, personality disorder, and two disc protrusions in his back resulting from a car accident. Timmons's applications were denied initially and on reconsideration.

Timmons, his mother, and a vocational expert ("VE") testified at a hearing before an Administrative Law Judge ("ALJ"). Timmons also submitted 22 letters from friends, family members, and former co-workers and employers. The letters were written between October 2007 and October 2009 and described Timmons's history since childhood of mood swings, manic outbursts, and violent behavior, which has persisted into adulthood. Numerous letter writers stated that Timmons had trouble interacting with other people, could not control what he said or how he acted, and spoke loudly and excessively. Former co-workers and employers also

2

described Timmons's inability to stay focused on work tasks and his confrontations with co-workers, which made it difficult for Timmons to keep a job for long.

## B.    ALJ's Decision

After the hearing, the ALJ issued a decision denying Timmons benefits. Following the five-step evaluation process, the ALJ found: (1) Timmons had not engaged in substantial gainful activity from his alleged disability onset date; (2) Timmons had the severe impairments of polysubstance abuse, schizoaffective disorder, thoracic compression fractures, and a disc bulge at L4-5; (3) Timmons's impairments, singly or in combination, did not meet or medically equal one of the listed impairments in the regulations; (4) Timmons could not perform his past relevant work as an electrician, but had the residual functional capacity ("RFC") to perform light work except that he required a sit/stand option and he was limited to simple one- and two-step tasks and to occasional contact with the public, coworkers, and supervisors; and (5) given Timmons's age, education, work experience, and RFC, there existed jobs in significant numbers in the national economy that Timmons could perform, including tobacco leaf tier, ampoule sealer, and electrical parts assembler.

In concluding that Timmons's mental impairments did not meet or equal a listed mental impairment, the ALJ found that Timmons had only mild restrictions in activities of daily living and social functioning and moderate difficulties with

3

concentration, persistence, or pace and had experienced one or two episodes of decompensation of extended duration.[1]  In doing so, the ALJ noted that the letters Timmons submitted indicated that Timmons had difficulty concentrating and following instructions, had confrontations with coworkers and supervisors, talked incessantly, and had volatile moods.  However, two consulting psychologists who had reviewed Timmons's records had concluded that Timmons could complete simple and complex tasks within an appropriate time frame and could carry out instructions and adequately relate to others in a work setting.

In determining Timmons's RFC, the ALJ reviewed the various medical opinions and explained the amount of weight she assigned to each.  On appeal, Timmons takes issue with the ALJ's handling of only two of these medical opinions, the opinions of Dr. Alvan Barber and Dr. Najib Kirmani, consultants who examined Timmons.

Dr. Barber conducted two separate physical examinations.  After a September 2007 examination, Dr. Barber noted, inter alia, that Timmons: (1) had

---

[1]As part of the determination whether a mental impairment meets or equals a listed impairment, the ALJ uses a "special technique" to evaluate the severity of mental impairments in four areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation.  20 C.F.R. pt. 404, subpt. P, app'x 1 § 12.00I; see also 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). To meet or equal a listed impairment, the claimant must, among other things, have two of the following: (1) marked limitation of activities of daily living; (2) marked limitation in maintaining social functioning; (3) marked limitation in concentration, persistence or pace; and (4) repeated episodes of decompensation of extended duration, which means either three episodes within one year or an average of one every four months, each lasting for at least two weeks.  20 C.F.R. pt. 404, subpt. P, app'x 1, § 12.00C.  In Timmons's case, the ALJ found that Timmons did not meet any of the four criteria and thus did not have a listed mental impairment.

5/5 muscle strength in both his upper and lower extremities; (2) had 5/5 grip strength, but he had no deep tendon reflexes; (3) had no point tenderness in his sacroiliac joints; (4) felt pain when, in a supine position, his leg was raised to 90 degrees, but he had a negative Lasegue's Test; (5) was able to walk on his heels, walk on his toes, and squat; and (6) had a negative Romberg sign. Dr. Barber concluded that Timmons could walk, stand, and sit for a reasonable amount of time without discomfort. However, according to Dr. Barber, Timmons could be limited in his ability to lift and carry heavy objects.

At a second, April 2008 examination, Dr. Barber reported that Timmons: (1) had not received treatment or medication for his back pain since 2006, and he had incontinence approximately once a week; (2) heard a popping noise in his spine; and (3) again felt pain when, in a supine position, his leg was raised, but his Lasegue's Test was negative. Dr. Barber came to the same conclusion regarding Timmons's ability to walk, stand, sit, and lift and carry heavy objects as he had in 2007, but Dr. Barber also noted that Timmons was unable to squat and Timmons's symptoms might be exacerbated by his excess weight.

Dr. Kirmani conducted a psychiatric evaluation. Dr. Kirmani's report noted, inter alia, that Timmons: (1) was appropriately dressed and groomed and was able to relate to and cooperate with Dr. Kirmani; (2) was alert, had no speech or psychomotor abnormalities, and had a normal mood; (3) was fully oriented, had no

5

hallucinations, had intact memory and judgment, and adequate insight. Dr. Kirmani concluded that Timmons did not have a psychotic reaction, had no deterioration in personal habits, had no impaired ability to relate to Dr. Kirmani, and had no identified intellectual deterioration. Dr. Kirmani opined that Timmons had depressive disorder, but that Timmons was able to make personal and social adjustments and had the ability to understand, remember, and carry out instructions.

The ALJ gave "great weight" to these two doctors' medical opinions. The ALJ explained that she did so because their opinions were "consistent with the medical evidence of record and are supported by the record as a whole" and because "the doctors had the opportunity to personally examine the claimant before forming their opinions."

## C.    Appeals Council's Denial of Review

Timmons filed a request for review with the Appeals Council and submitted new evidence. To his appeal brief, Timmons attached three additional letters from people who had witnessed Timmons's continued problems with social functioning.

Timmons also submitted a mental health evaluation conducted by Carol Beall, a licensed clinical social worker, on November 23, 2010, several months after the ALJ issued her decision. As a result of her exam, Beall observed that: (1) Timmons was well groomed, oriented, and maintained good eye contact; (2) he

spoke rapidly, but his speech was coherent, relevant, and goal directed, but also often tangential; (3) his mood was labile, with tearfulness at times and hypomania at other times; (4) he did not have hallucinations or delusions, but he did have some religious preoccupation; (5) he had good insight into his mental health and addiction problems, but his symptoms remained problematic despite his compliance with treatment; (6) he had marked impairment of his memory at times and fair concentration, but required some redirection; (7) he had no suicidal or homicidal ideation. In her clinical findings, Beall stated that Timmons was cooperative and friendly during the interview and open and honest about his mental health problems. Timmons's judgment was impaired at times, which impaired his ability to function, but he was willing to be "med compliant" and sober.

Timmons claimed that the letters and Beall's evaluation showed that Timmons's limitations in social functioning were more severe than the limitations found by the ALJ. Timmons asked the Appeals Council to remand his case to the ALJ with instructions to reconsider and revise the RFC assessment and to obtain testimony from the VE regarding jobs he could perform with that revised RFC.

The Appeals Council denied review of the ALJ's decision. The Appeals Council noted that it considered and made part of the record Timmons's new evidence, which it listed as Timmons's appeal brief and the treatment evidence

from Carol Beall.  The Appeals Council concluded that "this information [did] not provide a basis for changing the [ALJ's] decision."

The Appeals Council stated that Timmons's appeal brief was incorporated into the record.  However, the three letters purportedly attached to that brief are not in the agency's certified administrative record filed with the district court.

## D.    District Court Proceedings

On judicial review, Timmons argued, inter alia, that his case should be remanded to the Appeals Council, under either "sentence four" or "sentence six" of § 405(g), for consideration of his new evidence.  Timmons submitted copies of the three letters with his memorandum filed in the district court.  The three letters, all written in June 2010, described Timmons's difficulties interacting with others.

Jason Amici, Timmons's neighbor, stated that he had known Timmons for three years and that Timmons talked excessively and loudly, was known to say things without respect for people's feelings, and had numerous run-ins with neighbors and friends.  Amici estimated that Timmons had confrontations with someone approximately every week and that he had a difficult time communicating with normal behavior.

Jarod Lebrun, Timmons's friend for seven years, stated that over the years he and Timmons had had numerous confrontations due to Timmons's poor judgment.  Timmons had a loud mouth, said demeaning things, and did not care

8

what he said, who he said it to, or who heard it.  Timmons's mood also changed frequently, and he had trouble interacting appropriately with others.

Paul Walker stated that during the six years he had known Timmons, Timmons had exhibited many inappropriate behaviors, including saying things without consideration for people's feelings and cursing.  Timmons had a history of altercations with friends, family, and neighbors.  Walker said that it was an "everyday occurrence" for Timmons to have strange thoughts and loud and rambling speech.

A magistrate judge entered an order affirming the Commissioner's decision.[2] As to Timmons's remand request, the magistrate judge found that the three additional letters Timmons tried to submit to the Appeals Council as new evidence, but that were not found in the administrative record, were cumulative of other letters already in the administrative record.  Therefore, the magistrate judge concluded that these three letters were not new and material evidence and that a sentence six remand was not warranted.

Timmons filed a motion for reconsideration, pointing out that the magistrate judge had not addressed his argument for a sentence four remand.  The magistrate judge denied the motion for reconsideration, stating that Timmons's request was

---

[2]The parties consented to proceed before the magistrate judge.

addressed in the portion of the order concerning Timmons's new evidence.

Timmons filed this appeal.

## II.  MAGISTRATE JUDGE'S DENIAL OF REQUEST FOR A REMAND

Timmons contends the magistrate judge should have remanded his case to the Appeals Council under either "sentence four" or "sentence six" of 42 U.S.C. § 405(g) because of the new evidence he submitted.[3]  Specifically, Timmons claims that a remand was necessary because the Appeals Council failed: (1) to acknowledge receipt of his three additional letters in its decision or to incorporate the letters into the record; and (2) to remand the case to the ALJ in light of Timmons's new evidence.

A social security claimant generally is permitted to present new evidence at each stage of the administrative process.  See 20 C.F.R. §§ 404.900(b), 416.1470(b); see also Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1261 (11th Cir. 2007).  The Appeals Council has the discretion not to review the ALJ's denial of benefits.  20 C.F.R. §§ 404.967, 416.1467.  However, the Appeals Council must consider "new and material evidence" that "relates to the period on or before the date of [the ALJ] hearing decision" and must review the case if the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence currently of record."  20 C.F.R. §§ 404.970(b), 416.1470(b).

---

[3]We review de novo a district court's determination whether to remand under § 405(g) based on new evidence.  Vega v. Comm'r of Soc. Sec., 265 F.3d 1214, 1218 (11th Cir. 2001).

There are two methods of remand under § 405(g)—"sentence four remands" and "sentence six remands." Ingram, 496 F.3d at 1261.[4]  A sentence four remand is appropriate when the claimant submitted new evidence to the Appeals Council, which the Appeals Council did not adequately consider in denying the claimant's request for review.  Id. at 1268.  To obtain a sentence four remand, the claimant must show that, in light of the new evidence submitted to the Appeals Council, the ALJ's decision to deny benefits is not supported by substantial evidence in the record as a whole.  Id. at 1266-67.

In contrast, a sentence six remand is appropriate only when the claimant submits evidence for the first time to the district court that might have changed the outcome of the administrative proceeding.  Id. at 1267-68.  To remand under sentence six, the claimant must show the evidence is new and material and was not incorporated into the administrative record for good cause.  Id. at 1267.  New evidence is material, and thus warrants a remand, if "there is a reasonable possibility that the new evidence would change the administrative outcome." Hyde v. Bowen, 823 F.2d 456, 459 (11th Cir. 1987).

## A.    Sentence Six Remand

---

[4]The fourth sentence of § 405(g) provides the federal court with the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  The sixth sentence provides that the federal court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  42 U.S.C. § 405(g).

The district court did not err in refusing to remand Timmons's case under sentence six. The parties agree that because the Appeals Council failed to refer to Timmons's three additional letters in its decision and did not include them in the certified administrative record, those letters should be considered evidence submitted for the first time to the district court under sentence six of § 405(g). Moreover, the government does not dispute that Timmons has shown good cause.

We agree with the magistrate judge, however, that the three letters are not "new and material" because they are cumulative of numerous other letters already in the administrative record that described Timmons's difficulties interacting with others. Specifically, the three additional letters, like the letters already in the record, stated that Timmons speaks loudly and excessively, has mood swings, says things that hurt others' feelings, and is confrontational. The ALJ considered the other letters already in the record that described this behavior and concluded that those letters were not consistent with the medical evidence and the doctors' opinions as to the severity of Timmons's limitations in social functioning. Under the circumstances, Timmons has not shown a reasonable possibility that his three additional letters describing the same social difficulties would change the administrative outcome. See Hyde, 823 F.2d at 459.

In addition, we reject Timmons's contention that the three letters are not cumulative because they cover a different time period. Although the letters were

written in June 2010, the letters described in general terms Timmons's behavior over a period of years and did not give specific dates.

We also reject Timmons's claim that the letters are material because they refute the ALJ's finding that Timmons stopped experiencing social problems when he was sober. First, the ALJ never made such a finding. Instead, the ALJ found that Timmons had the serious mental impairments of polysubstance abuse and schizoaffective disorder and that these mental impairments resulted in functional limitations of (1) simple one- and two-step tasks, and (2) only occasional contact with the public, co-workers, and supervisors. The ALJ further noted that Timmons had a history of alcohol and drug abuse, Timmons received substance abuse treatment from September 2006 to March 2007, and Timmons testified that he had relapsed with drinking and was not attending Alcoholics Anonymous. The ALJ also noted that one consulting psychologist had observed that Timmons's functioning had improved with sobriety. The ALJ ultimately found that Timmons's mental impairments were effectively managed with medication and did not prevent him from performing light work with those two mental limitations.

We note that both the consulting psychologist's observation (that Timmons's functioning improved when he was sober) and the ALJ's finding (that Timmons's mental impairments were effectively managed with medication) are supported by substantial evidence. Specifically, the record shows that, after Timmons received

13

residential substance abuse treatment at Serenity House from September 2006 to March 2007, he received ongoing medication management from Act Corporation. Thereafter, his medical records and psychological evaluations from 2008 to 2010 indicate that he was doing well, with the exception of one period in the fall of 2009, when he was not compliant with his medication and admitted drinking.

Specifically, according to Act Corporation's treatment notes, during a September 2009 follow-up, Timmons reported increased anxiety and admitted to drinking two beers in the past week. The importance of Timmons's sobriety was discussed with him. Two months later, Timmons reported panic attacks and admitted decreasing his medication without permission. Timmons was given Klonopin in the emergency room because he had not been taking his medication. The treatment notes stated that Timmons needed to attend AA meetings. By February 2010, Timmons was again taking his medications and reported that they were helping him. Treatment notes from this visit indicated, inter alia, that there was no evidence of substance abuse and that Timmons's attention/concentration, judgment, and insight were good, his speech, motor behavior, and impulse control were normal, his affect was in the normal range, and his thought process was organized. Progress notes stated that Timmons was doing well, was bright and conversational, and his mood was stable, although he was religiously preoccupied.

Second, the three letters do not, as Timmons suggests, refute the consulting psychologist's observation that Timmons's functioning improved during sobriety. Indeed, the letters do not mention Timmons's substance abuse or his sobriety at all. Furthermore, the letters do not indicate that additional limitations beyond those already in the RFC are necessary. For all these reasons, the district court properly concluded that a remand under sentence six was not warranted.

**B.    Sentence Four Remand**

The district court also did not err with respect to Timmons's request for a sentence four remand. A sentence four remand was warranted only if the new evidence considered by the Appeals Council—Carol Beall's mental health evaluation—showed that the ALJ's decision to deny benefits was not supported by substantial evidence in the record as a whole. See Ingram, 496 F.3d at 1266-67. Nothing in Beall's evaluation suggests that the ALJ's limiting Timmons to simple one- and two-step tasks and to only occasional contact with co-workers, supervisors, and the public was inadequate to address Timmons's mental impairments. Even in light of Beall's evaluation, the ALJ's RFC assessment and ultimate decision to deny benefits are supported by substantial evidence.

## III.  PHYSICIANS' OPINIONS

Timmons argues that the ALJ did not adequately explain the weight given to the opinions of two examining physicians, Dr. Barber and Dr. Kirmani. As a

result, Timmons asserts, the ALJ's RFC assessment is not supported by substantial evidence.[5]

## A.    Evaluation of Medical Opinions

An ALJ uses a five-step evaluation to determine whether the claimant is disabled, which includes (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of specified impairments in the Listing of Impairments; (4) whether the claimant has the RFC to perform his past relevant work; and (5) whether, in light of the claimant's RFC, age, education, and work experience, there are a significant number of jobs in the national economy that the claimant can perform.  20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); see also Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178 (11th Cir. 2011).

In determining at steps four and five whether a claimant can perform his past relevant work or other work in the economy, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence.[6]  Phillips v. Barnhart,

---

[5]Our review is limited to whether the ALJ's decision is supported by substantial evidence and based on proper legal standards.  Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178 (11th Cir. 2011).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Id. (quotation marks omitted).  Under this limited standard of review, we do not make findings of fact, reweigh the evidence, or substitute our judgment for that of the Commissioner.  Id.
    [6]Residual functional capacity is what a claimant can do in a work setting despite any physical, mental, or environmental limitations caused by the claimant's impairment and its

16

357 F.3d 1232, 1238-39 (11th Cir. 2004); see also 20 C.F.R. §§ 404.1520(e), 416.920(e).  In assessing RFC, the ALJ must state with particularity the weight given different medical opinions and the reasons for doing so.  Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987).  Without this explanation, a reviewing court cannot determine whether the decision was supported by substantial evidence.  Winschel, 631 F.3d at 1179.  However, the ALJ's explanation of the decision need not account for every piece of evidence.  Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005).

In evaluating medical opinions, the ALJ considers many factors, including the examining relationship, the treatment relationship, the doctor's specialization, whether the opinion is amply supported, and whether the opinion is consistent with the record.  20 C.F.R. §§ 404.1527(c), 416.927(c).  Generally, the opinions of examining physicians are given more weight than non-examining physicians, and the opinions of treating physicians are given more weight than non-treating physicians.  See id. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2).

**B.    Opinions of Drs. Barber and Kirmani**

Here, the ALJ adequately explained the weight she gave to the opinions of Dr. Barber and Dr. Kirmani.  The ALJ reviewed each doctor's examination

---

related symptoms.  See 20 C.F.R. §§ 404.1545(a), 416.945(a).  RFC includes physical abilities, such as standing, sitting, or walking, and mental abilities, such as understanding, carrying out instructions, or responding appropriately to supervision, co-workers, or work pressure.  Id. §§ 404.1545(b)-(c), 416.945(b)-(c).

17

findings and then stated that she had "accorded great weight" to their medical opinions because they "are consistent with the medical evidence of record and are supported by the record as a whole" and also because the doctors had "personally examine[d]" Timmons.  The ALJ's explanation of its treatment of these two doctors' opinions is sufficient to allow for meaningful review.

Timmons argues that Dr. Barber's opinion was too imprecise or tentative to support the ALJ's RFC findings as to Timmons's exertional limitations, such as Timmons's ability to walk, sit, lift and carry.  However, the ALJ was not limited to Dr. Barber's opinion or his clinical findings in making her RFC assessment.  Rather, the ALJ considers all the relevant evidence in making an RFC assessment.  See 20 C.F.R. §§ 404.1520(e), 416.920(e).  Other evidence in the record, including the treatment notes from Timmons's physical therapy and Timmons's own statements and hearing testimony as to his daily activities and physical abilities, provided additional information about Timmons's ability to walk, stand, sit, lift, and carry, and the ALJ was not required to specifically reference each piece of evidence in the decision.  See Dyer, 395 F.3d at 1211.

For example, Timmons testified that he could sit and stand for about an hour and that he could walk for about a half an hour.  In 2007, he reported that he could walk for about 30 minutes, stand for about 30 minutes, sit for two or three hours and could lift 15 to 20 pounds.  Similarly, during Dr. Barber's 2008 examination,

18

Timmons told Dr. Barber he could walk for 20 minutes, stand for 30 minutes, sit for two or three hours, and could lift 10 to 20 pounds. The physical therapy treatment notes stated, inter alia, that Timmons pain was reduced from eight out of ten to zero out of ten, he was able to conduct his usual activities with no pain, and he could sit, stand, and walk. Timmons's physical abilities, expressed in his own statements and in the treatment notes, are consistent with the ability to perform light work with a sit/stand option. See 20 C.F.R. §§ 404.1567(b), 416.967(b).

Timmons also claims that the ALJ's failure to account for Dr. Barber's finding that Timmons could not squat is reversible error. Although the IJ noted Dr. Barber's finding that Timmons could not squat in her decision and gave Dr. Barber's opinion great weight, the IJ did not include a squatting limitation in her RFC assessment. The problem for Timmons is that squatting (also referred to as crouching) is not required for any of the jobs the ALJ found Timmons could perform. See Dictionary of Occupational Titles, 529.687-138, 1991 WL 674769 (leaf tier), 559.687-014, 1991 WL 683782 (ampoule sealer), 729.687-010, 1991 WL 679733 (assembler of electrical accessories). Accordingly, the omission of a squatting restriction from the RFC assessment was harmless error.

Nor did the ALJ err in failing to discuss Dr. Barber's finding that Timmons's obesity might exacerbate his symptoms. As already discussed, the ALJ considered the medical evidence and Timmons's own reports of his daily activities

19

and physical abilities.  This evidence supported a finding that Timmons could perform light work with a sit/stand option despite any effect his obesity had on his symptoms.

Finally, Timmons takes issue with the ALJ's decision to give great weight to Dr. Kirmani's opinion that Timmons was able to make personal and social adjustments and to understand, remember, and carry out instructions.  Timmons contends that Dr. Kirmani's opinion is inconsistent with other evidence in the record that Timmons had significant mental problems despite continuing treatment.

Substantial evidence supports the ALJ's decision to give Dr. Kirmani's opinion great weight.  Although the record contains evidence of Timmons's difficulties with social functioning, Timmons himself reported to Dr. Kirmani that he got along with family, friends, neighbors, store clerks, and doctors.  At the hearing, Timmons testified that he helped his parents with housework and yard work, that he mowed several neighbors' lawns for money, and that he could do a simple job if he had transportation.  The treatment notes from Act Corporation and from Dr. Barber's examination indicated that Timmons was cooperative and communicated well.  Another consulting psychologist, Dr. Michael Zelenka, reviewed the record and opined that Timmons was not significantly limited in his ability to, inter alia: (1) understand, remember, and follow simple and detailed instructions; (2) accept instructions and respond appropriately to criticism from

20

supervisors; and (3) get along with coworkers or peers without distracting them or exhibiting behavioral extremes.  Dr. Zelenka opined that "given some allowances for occasional prob[lem]s with [attention] and [concentration] and for occasional psychol[ogical] problems affecting productivity, and given limited public contact, [claimant] retains adequate mental ability to carry out instr[uctions] and to relate adequately to others in a routine work setting."  In other words, as the ALJ explained, Dr. Kirmani's opinion that Timmons could make personal and social adjustments and could understand, remember, and follow instructions is consistent with other evidence in the record.  Thus, substantial evidence supports the ALJ's decision to give great weight to Dr. Kirmani's opinion.

## IV.  LIMITATIONS IN CONCENTRATION, PERSISTENCE, AND PACE

Timmons contends that the ALJ failed to adequately reflect Timmons's limitations in maintaining concentration, persistence, and pace in her RFC assessment and in the hypothetical question she posed to the vocational expert.

At the fifth step, the Commissioner bears the burden to show that, in light of the claimant's RFC and other factors, there exist in the national economy a significant number of jobs the claimant can perform.  Winschel, 631 F.3d at 1180; 20 C.F.R. §§ 404.1520(a)(4)(V), 416.920(a)(4)(V).  If such jobs exist, then the claimant is not disabled.  20 C.F.R. §§ 404.1520(a), 416.920(a).  An ALJ may

21

make this determination by posing hypothetical questions to the VE.  See

Winschel, 631 F.3d at 1180.

For the VE's testimony to constitute substantial evidence, the ALJ's

hypothetical question need not include "each and every symptom of the claimant,"

but must include "all of the claimant's impairments."  Ingram, 496 F.3d at 1270.

An ALJ's hypothetical question restricting the claimant to simple and routine tasks

adequately accounts for restrictions related to concentration, persistence, and pace

where the medical evidence demonstrates that the claimant retains the ability to

perform the tasks despite limitations in concentration, persistence, and pace.  See

Winschel, 631 F.3d at 1180 ("[W]hen medical evidence demonstrates that a

claimant can engage in simple, routine tasks or unskilled work despite limitations

in concentration, persistence, and pace, courts have concluded that limiting the

hypothetical to include only unskilled work sufficiently accounts for such

limitations.").

In this case, the ALJ's hypothetical question adequately accounted for

Timmons's moderate limitations in concentration, persistence, and pace.  The ALJ

asked the VE to assume the individual had the ability to do light work with a

sit/stand option, but that the "job should be simple, one-two step task, there should

be only occasional contact with the public, coworkers, and supervisors."  The VE

identified the three jobs of leaf tier, ampoule sealer, and electronic parts assembler.

22

In response to follow-up questions, the VE explained that these three jobs were not assembly line jobs on a conveyor belt, but instead could be performed at a work station.

Notably, both non-examining, consulting psychologists, Dr. Zelenka and Dr. Lauriann Sandrik, concluded that despite moderate limitations in maintaining concentration, persistence, and pace, Timmons could: (1) understand, remember and carry out both short and simple and detailed instructions; (2) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (3) sustain an ordinary routine without special supervision; (4) work in coordination with or in proximity to others without being distracted by them; and (5) make simple work-related decisions.

Dr. Sandrik further stated that Timmons "appears mentally capable of completing simple and complex tasks within an appropriate time frame." Similarly, Dr. Zelenka stated that, with allowances for occasional problems with concentration and attention and occasional psychological problems affecting productivity, Timmons had the mental ability to carry out instructions in a routine work setting.  Dr. Kirmani, who examined Timmons, likewise found that Timmons could understand, remember, and carry out instructions.  In light of this supporting medical evidence, the ALJ's restriction to simple, one- and two-step instructions in

23

her hypothetical question sufficiently accounted for Timmons's limitations in concentration, persistence, and pace.

## V. CONCLUSION

For all these reasons, we conclude that the Commissioner's decision denying Timmons disability and supplemental security benefits is supported by substantial evidence. We also find no error in the magistrate judge's denial of Timmons's request to remand his case to the Commissioner.

**AFFIRMED.**