[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-15086
Non-Argument Calendar
_____

D.C. Docket No. 1:12-cv-00205-GRJ

GLORIA WEAVER,

Plaintiff-Appellant,

versus

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(May 30, 2014)

Before TJOFLAT, WILSON and ANDERSON, Circuit Judges.

PER CURIAM:

Gloria Weaver appeals the Magistrate Judge's decision affirming the Social Security Commissioner's ("the Commissioner") denial of her application for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*[1]  In her opening brief, Weaver argues that the Administrative Law Judge ("ALJ") failed to give proper weight to the opinion of her treating physician, Dr. Jesse A. Lipnick, when assessing both her mental and physical impairments.  Appellant's Br. at 11 *et seq.* She contends that Dr. Lipnick rendered an opinion bolstered by the medical evidence; moreover, the ALJ should have given the opinion more weight than opinions of non-examining state physicians because Dr. Lipnick was her treating physician.

I.

We review *de novo* the legal principles upon which the Commissioner based her decision.  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).  We review the Commissioner's findings to determine if they are supported by substantial evidence.  *Vega v. Comm'r of Soc. Sec.*, 265 F.3d 1214, 1218 (11th Cir. 2001).  Substantial evidence is a lower standard than the preponderance-of-the-evidence standard, as it requires only "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Moore*, 405 F.3d at 1211.

---

[1]  The Magistrate Judge presided over the case to judgment with the parties' consent. *See* 28 U.S.C. § 636(c)(1) and (3).

A claimant for disability benefits must prove that she is disabled. *Id.* A claimant is eligible for benefits if she demonstrates that she was disabled on or before the last date for which she was insured. *Id.* There is a five-step evaluation process to determine whether the claimant is disabled, which is as follows: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the impairment in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of her past work, even with the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform in light of the claimant's RFC, age, education, and work experience. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). In determining whether a claimant is impaired, the ALJ considers objective medical evidence. 20 C.F.R. § 416.929(c)(2). The ALJ also considers "any measures [the claimant] use[s] or ha[s] used to relieve [her] pain or other symptoms. *Id.* § 416.929(c)(3).

The ALJ generally is required to give the medical opinions of treating physicians "substantial or considerable weight." *Winschel*, 631 F.3d at 1179. However, the ALJ need not give considerable weight to a treating physician's opinion where good cause exists not to do so. *Id.* Good cause is present where the

3

(1) treating physician's opinion is not bolstered by the evidence, (2) the evidence supported a contrary finding, or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id.* The ALJ must clearly articulate her reasoning for discounting the treating physician's opinion. *Id.* Moreover, the opinions of treating physicians generally are given more weight than the opinions of non-treating physicians. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

## II.

After receiving testimony from Weaver and considering the medical evidence submitted, the ALJ found that Weaver had not engaged in substantial gainful activity since the date of her application for SSI benefits[2] and that she had severe physical impairments that, individually or in combination, had more than a minimal effect on her ability to perform work-related functions, to-wit: degenerative disc disease, degenerative joint disease, carpal tunnel syndrome, chronic obstructive pulmonary disease, obesity, and hypertension.

The ALJ found Weaver's alleged mental impairments—a bipolar disorder coupled with chronic frustration and anger—not severe since they presented no more than a minimal limitation on her ability to perform basic mental work

---

[2] Weaver, a single woman who lived with her two teenage children, testified that she had not worked in over 15 years, that she did some housework and could go grocery shopping with her daughter and sister, but that she had to hold onto the grocery cart to walk. Even then, in walking, she would experience pain in her hip, knee and back and her left leg went numb.

activities.  The ALJ based that finding on the opinions of two psychologists, Carol A. Deatrick, Ph.D., and Alan J. Harris, Ph.D., who stated that the bipolar disorder was "well managed on medication" and the scant weight she gave the opinion of Kim Thomas, ARNP ("advanced registered nurse practitioner"), who concluded that Weaver could not work because she was easily frustrated and angered.

The Magistrate Judge, in reviewing the ALJ's decision, focused his attention on the issue Weaver raises in this appeal: whether the ALJ failed to give proper weight to the opinion of her treating physician, Dr. Lipnick, that she was disabled because she "can stand and/or walk less than 2 hours in an 8-hour workday; . . . can sit less than about 5 hours in an 8-hour workday; . . . and can be easily frustrated & angered."  Appellant's Br. at 2-3, 9-10, 13-14.[3]  Like the Magistrate Judge, we are reviewing a cold record and, in essence, deciding whether he got it right in concluding that substantial evidence supported the ALJ's decisions to reject Dr. Lipnick's opinion that Weaver's propensity to become easily frustrated and angry constituted a mental impairment and to "assign only some weight" to his opinion that her physical impairments rendered her unable to work.

---

[3]  Dr. Lipnick wrote  that Weaver "can be easily frustrated & angered" in responding to the Commissioner's question, "Is this individual capable of sustaining work activity for eight hours a day, five days a week?"  He wrote that Weaver "can stand and/or walk . . . . in an 8-hour workday" in responding to the "Commissioner's questions regarding . . . Weaver's physical limitations."  Appellant's Br. at 2-3, 9-10, 13-14.

Dr. Lipnick addressed Weaver's alleged mental impairment in a "Treating Source Mental Health Report" dated May 2, 2008, and prepared by Kim Thomas.[4] Weaver argues that the ALJ should have given great weight to Dr. Lipnick's opinion that she was not capable of sustaining work activity for eight hours a day, five days a week, because "she can easily be frustrated & angered." *Id.* at 9. The ALJ said this about Dr. Lipnick's opinion.

> In a form dated May 21, 2008, Kim [Thomas], ARNP, wrote that the claimant could not sustain work because she can be easily frustrated and angered. However, Ms. [Th]omas in the same form wrote that the claimant's bipolar disorder was "well managed on medication" and that the claimant had normal mental status examinations with the exception of smelling of cigarette smoke. Consequently, the undersigned gives little probative weight to Ms. [Thomas'] conclusion that the claimant cannot work because of the conclusory nature of this opinion, the inconsistency of this statement with Ms. [Thomas'] own clinical findings, the claimant's very minimal treatment for any mental health issue, and the opinions of other more qualified specialists in the field of mental health, as well as the claimant's activities of daily living.

*Id.* The Magistrate Judge found ample support in the record for the ALJ's decision to afford Thomas's conclusion little probative weight. What Thomas wrote in the form itself indicated that Weaver was pleasant and cooperative, that her thought process and content were normal, that her concentration and memory were intact, and that she was oriented to person, place and time. As the Magistrate Judge concluded, the statement that Weaver was "unable to work because of anger

---

[4] Dr. Lipnick and Kim Thomas were members of the staff at "Southeastern Rehabilitation Medicine."

6

and frustration was wholly inconsistent with the observation of Dr. Lipnick/Ms.Thomas." *Id.* at 10.

That Weaver was unable to work due to her anger and frustration was also inconsistent with the opinions of Drs. Deatrick and Harris. As the Magistrate Judge noted, both psychologists concluded that Weaver "did not have a severe mental impairment and had no daily activity restrictions; mild difficulties in social functioning and concentration, persistence, or pace; and no episodes of decompensation." *Id.* 10-11.

Dr. Lipnick's opinion that in an 8-hour workday, Weaver could stand or walk less than two hours and could sit less than five hours appears in his answers to the questions posed by a form entitled "Medical Source Statement of Ability To Do Work-Related Activities (Physical), that Dr. Lipnick filled out on June 3, 2010. The form focuses on "Exertional Limitations" and contains a list of questions under five headings: "1. Lifting/Carrying," "2. Standing and/or Walking," "3. Sitting," "4. Pushing and/or Pulling," and Postural Limitations." The ALJ summarized Dr. Lipnick's answers to the questions thusly:

> In a medical source statement form dated June 3, 2010, Dr. Lipnick indicated that the claimant could carry ten pounds occasionally and less than ten pounds frequently; she could stand and/or walk less than two hours in an eight hour day; she could sit for less than six hours in an eight hour day; she could push and pull on a limited basis in both upper and lower extremities; and she could never climb, balance, kneel, crouch, crawl, or stoop. The undersigned has assigned some

weight to the opinion of Dr. Lipnick because of his treating relationship; however, . . . his estimates are overly pessimistic considering the minimally positive clinical and laboratory findings and the claimant's conservative treatment.

*Id.* at 11.

The Magistrate Judge found the following record support for the ALJ's decision to afford Dr. Lipnick's opinion only "some weight." First, the form Dr. Lipnick filled out contained this question following the fourth heading, "What medical/clinical finding(s) support your conclusions in items 1-4 above?" A large space was provided for Dr. Lipnick to articulate findings that supported those items. But he left the space blank.

Second, the diagnostic tests were normal, including an EMG/nerve conduction study, MRI of the low back, and left leg EDX. The tests revealed no evidence of nerve entrapment, radiculopathy, or peripheral neuropathy in the left leg.

Third, other medical records, including Dr. Lipnick's own treatment notes, were contradictory. For example, both Dr. Lipnick and Dr. Wilda Murphy[5] consistently noted that Plaintiff had a normal, non-antalgic gait with some mild lumbar and cervical spasm. She underwent left carpal tunnel release surgery in May 2008; the medical records indicate that it was successful, with only minor

_____

[5] Dr. Murphy, like Dr. Lipnick, was a member of the staff at Southeastern Rehabilitation Medicine. *See* note 4 *supra.*

8

complaints of pain and numbness following the surgery.  In July 2008, Dr. Robert A. Greenberg, a consultative who examined Weaver, noted that her grip strength and fine manipulation were normal; his notes do not reflect that she reported any problems with her left arm.  Dr. Greenberg also observed that she had a normal gait, could tandem walk, and could walk on her heels and toes.  He did note some decreased range of motion and decreased left leg strength.  Drs. Eric C. Puestow and James Patty, agency physicians, both concluded that Weaver could lift and carry 20 pounds occasionally and 10 pounds frequently; stand or walk six hours in an 8-hour day or sit about six hours in an 8-hour day.

In sum, we agree with the Magistrate Judge that substantial evidence supported the ALJ's evaluation of Dr. Lipnick's June 3, 2010, opinion regarding Weaver's physical impairments and thus the ALJ's decision to afford it only some weight.  We also affirm the Magistrate Judge's decision to affirm the Commissioner's decision denying Weaver the SSI benefits she sought.[6]

---

[6] Although Weaver does not challenge the Magistrate Judge's decision that substantial evidence supported the ALJ's reliance on the vocational expert's testimony regarding the jobs available for a woman fitting her description, we nonetheless summarize his testimony.

The ALJ asked the vocational expert, Robert Hickey, if jobs were available for 45-year-old woman with a high school education, no past relevant work, and the following restrictions: lifting 20 pounds occasionally and 10 pounds frequently, sitting, standing, or walking through the workday, occasionally climbing, balancing, stopping, kneeling, crouching and crawling and being exposed to vibration or concentrated levels of dust, fumes or gases.  Hickey opined that this hypothetical woman could perform light jobs, including a restaurant bus person, dining room attendant, machine attendant—specifically, a confectionary drops machine operator—and a bottling line attendant.  The ALJ then asked whether

AFFIRMED.

---

jobs would be available if the woman was limited to lifting 10 pounds only occasionally and less than 10 frequently, standing or walking for two hours of an 8-hour day and pushing or pulling only occasionally.  Hickey opined that sedentary jobs were available, including dispatchers at the street department, call-out operators, and appointment clerks.  He adhered to his opinion when asked if the woman needed to change her position every 10 to 15 minutes.  If she had to lie down beyond normally scheduled break time, though, no jobs would be available.