[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-10988

Non-Argument Calendar

_____

TIMOTHY EUGENE PLIER,

Plaintiff-Appellant,

*versus*

SOCIAL SECURITY ADMINISTRATION, COMMISSIONER,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 4:20-cv-01627-AMM

_____

Before WILSON, LUCK, and TJOFLAT, Circuit Judges.

PER CURIAM:

Timothy Eugene Plier appeals following the District Court's affirmation of the denial of his application for social security disability insurance benefits (DIB or SSDI).  Plier applied for DIB in February 2016, the Commissioner denied his claim, and then, after two administrative hearings, an Administrative Law Judge (ALJ) denied his claim in July 2018.  Plier appealed to the Appeals Council, it remanded the case, and, after a third hearing before the ALJ, the ALJ denied his claim in February 2020.  He unsuccessfully appealed the decision to the Appeals Council and District Court.

On appeal, Plier first argues that the ALJ failed to provide good cause when he or she did not follow the medical opinion of his treating physician, Dr. Munish Goyal.  Next, he asserts that substantial evidence did not support the ALJ's finding that his subjective testimony during the hearings was inconsistent with his activities of daily living.  Finally, Plier contends that the ALJ impermissibly relied on his lack of mental health treatment by a mental health professional when the ALJ denied his DIB claim.

We will address each point in turn.

**I.**

Plier initially applied for DIB in February 2016 complaining of chronic obstructive pulmonary disease (COPD), heart disease, and anxiety.  He was thirty-eight at the time.  The Commissioner

denied his claim. After two hearings, an ALJ denied his claim on July 31, 2018. Plier appealed to the Appeals Council, and it remanded, with orders for the ALJ to consider evidence of disability through Plier's last insured date and also to give further consideration to Dr. Goyal's opinion evidence. After a third hearing, the ALJ denied Plier's claim, and the Appeals Council denied his request for review. Plier appealed the decision to the District Court, which affirmed the agency's decision.

In January 2016, Plier was examined by cardiovascular surgeon Dr. David S. Fieno, who noted that Plier's femoral and radial pulses were normal, and his pedal pulses were only slightly diminished. Three months later, he saw cardiologist Dr. Munish K. Goyal and complained of six to seven fainting spells over the previous three months. Plier reported he did not regularly exercise, but was active. A mental examination showed that Plier had normal mood, affect, attention, and concentration. He also had a normal gait and an essentially unremarkable cardiovascular exam, with normal radial and femoral pulses, normal capillary refill, no edema, and only slightly diminished pedal pulses.

At a May 2016 follow-up visit with Dr. Goyal, Plier said he had no new cardiac concerns other than high blood pressure. Dr. Goyal noted that Plier did not routinely exercise, but his physical exam was normal, including normal gait. Plier's femoral and radial pulses were normal, he had only slightly diminished pedal pulses, and no edema was noted. Plier's psychiatric exam was also normal, with normal mood, affect, attention, and concentration.

Plier's next visit with Dr. Goyal was on June 1, 2016, after a recent trip to the emergency room because of elevated blood pressure. He complained of swelling in the lower extremities, but no chest pain or shortness of breath. Plier continued to exhibit normal mood, affect, attention span, and concentration. Again, his femoral and radial pulses were normal, but he had slightly diminished pedal pulses. However, this time he had mild bilateral edema, which is some minor lower leg swelling in both legs. On that same day, Dr. Goyal filled out a physical capacities evaluation form and checked a box indicating he believed Plier would miss more than four days of work per month due to his impairments. Dr. Goyal did not, however, complete the part of the form asking him to assess Plier's ability to sit, stand, walk, lift, carry, manipulate, or perform postural activities.

In September 2016, Plier saw Dr. Michael W. Swearingen, his primary care provider, for a follow-up on his anxiety and COPD. His cardiovascular exam was normal. Dr. Swearingen assessed anxiety and refilled Plier's Klonopin prescription, a sedative used to treat anxiety disorders. When Plier visited Dr. Swearingen again in April 2017, his blood pressure was better, and his physical exam was normal. Dr. Swearingen started Plier on Prozac and continued the Klonopin.

At an October 2017 visit with Dr. Goyal, Plier reported he was doing well, and his blood pressure had "been doing much better." He exhibited normal mood, affect, attention, and

22-10988                Opinion of the Court                5

concentration.  His physical and cardiac exams were normal.  Specifically, he exhibited normal femoral and radial pulses, and no edema.

Plier followed up with Dr. Swearingen in December 2017.  His blood pressure had been "doing better."  His gait and balance were normal, as were his cardiovascular, musculoskeletal, and neurological exams.  His affect was normal, and he exhibited no signs of depression or anxiety.

In January 2018, Plier underwent a consultative physical examination with cardiologist Dr. Ivan Lewis Slavich, III.  Plier said he drank "a lot of alcohol," up to twelve beers per day, which made his tremors and anxiety better.  He also said he was able to perform his daily activities.  Dr. Slavich noted that Plier had some venous insufficiency in the past, with syncope and palpitations, but no history of myocardial infarction, cerebrovascular accident, or transient ischemic attack.  Although Plier's heart rate was slightly increased, his heart exam was otherwise normal.[1]  Dr. Slavich noted a trace of pitting edema bilaterally and slight venous varicosities.  Plier could climb on the exam table and do a straight leg sit up without any difficulty.  He exhibited normal gait and no abnormal reflexes.  Although he had a slight tremor, there were no other sensory or motor deficits.

---

[1] Further, an echocardiogram showed normal ejection fraction of fifty-five percent; trace mitral and aortic insufficiency, which was not significant; and no significant intracardiac mass or pericardial effusion.

Dr. Slavich diagnosed syncopal episodes, which he suspected were secondary to anxiety disorder and alcohol abuse. He also diagnosed tobacco abuse and hypertension. Dr. Slavich opined that, based on his objective medical findings, Plier did not have significant impairments that would preclude him from doing work-related activities like sitting, standing, walking, lifting carrying, and handling.

Plier went to the emergency room two months later because he had a coughing spell and fainting episode while he was cooking. On examination, he was not functionally or cognitively impaired. A brain CT and chest x-ray were both normal.

Plier saw Dr. Swearingen in August 2018 for a routine follow-up and medication refills. He had been taking Klonopin for his tremors and anxiety and he was doing well on his medications. His physical and psychiatric exams results were essentially normal.

In Novemeber, Plier saw Dr. Goyal again for his one-year follow-up. Dr. Goyal noted that Plier was doing well from a cardiovascular standpoint and that, aside from occasional spikes, his blood pressure had been good. Plier reported he had no palpitations or syncope. Plier's physical, psychiatric, and cardiovascular exam findings were essentially normal.

Plier next saw Dr. Swearingen in March and September 2019. At both visits, Plier said he was doing well with his blood pressure. At the March visit, his breathing was unlabored, but he had bilateral expiratory wheezing. At the September 2019 visit, his breathing and breath sounds were normal. His musculoskeletal

and cardiovascular exams were normal at both visits, including no edema.

At a June 2019 visit with Dr. Fieno, Plier complained of tiredness, heaviness, swelling, aching, and throbbing in both legs. Compression stockings helped somewhat, but his legs would become heavier and more painful as the day went on. A vascular Doppler study was negative for deep vein thrombosis in both lower extremities, but the left great saphenous vein was incompetent at the saphenofemoral junction. To treat that, the next month, Dr. Fieno performed an endovenous ablation of the right and left great saphenous vein. Following that procedure, a lower extremity pulse volume recording study revealed no evidence of significant arterial occlusive disease, which would have indicated narrowness or blockage in an artery.

In October 2019, Plier followed up with Dr. Fieno. Dr. Fieno noted that Plier did not have heart failure symptoms. His cardiovascular exam was normal, except for some mild bilateral lower extremity edema and right leg venous stasis color changes.

Plier had his one-year follow-up appointment with Dr. Goyal on that same day. He was doing well from a cardiovascular point of view. His blood pressure had come down, and he denied palpitations and syncope. Plier's cardiovascular exam was normal, except for some mild bilateral lower extremity edema. He continued to exhibit normal mood, affect, concentration, and attention.

During a psychological evaluation, Plier testified that he occasionally did yard work for brief periods and prepared simple

meals.  During an administrative hearing, Plier claimed that he did not cook, but when he went to the emergency room in March 2018, he said he had passed out while cooking.  In a function report, Plier indicated that he was able to manage his personal care, except he shaved only once a week due to dizziness.  He also reported that he mowed the grass, did household repairs, went outside three or four times a day, managed his finances except for paying bills, and spent time with friends and family.

During the December 2019 hearing, the ALJ asked a vocational expert (VE) whether a hypothetical person with Plier's age, education, and work experience could perform work that exists in the national economy.[2]  Plier previously worked in construction and as a mixing machine operator.  The VE testified that such an individual could work as a small parts assembler, electronics worker, and inspector and hand packager.

Plier offers several arguments on appeal.  First, he argues that the ALJ failed to provide good cause to disregard the medical opinion of his treating physician, Dr. Munish Goyal, that Plier

---

[2] The ALJ also stipulated that the hypothetical person had the following limitations on the performance of light work: can occasionally climb ramps and stairs; can never climb ladders, ropes, or scaffolds; should avoid concentrated exposure to extreme cold, heat, fumes, odors, dusts, and other pulmonary irritants; should avoid any exposure to hazards; can understand, remember, and carry out short, simple instructions and attend to those for two-hour periods; needs a well-spaced work environment; can tolerate occasional interaction with the public, coworkers, and supervisors; and changes in the work place should be gradual and occur no more than occasionally.

would likely miss at least four days of work per month. Second, he asserts that substantial evidence did not support the ALJ's finding that his subjective testimony was inconsistent with his activities of daily living. Finally, he contends that the ALJ impermissibly relied on his lack of mental health treatment, specifically by a mental health professional, when the ALJ denied his DIB claim.

For the reasons stated below, each of these arguments fails.

## II.

We will normally review the ALJ's decision for substantial evidence, and its application of legal principles *de novo*. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam). Substantial evidence is any relevant evidence, greater than a scintilla, that a reasonable person would accept as adequate to support a conclusion. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). If, in light of the record as a whole, substantial evidence supports the ALJ's decision, we will not disturb it. *Id.* at 1439. Under this standard, we do not decide the facts anew, reweigh the evidence, or substitute in our judgment. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

The ALJ, not a physician, is responsible for determining whether a claimant is statutorily disabled. 20 C.F.R. § 404.1527(d)(1). Specifically, "[a] statement by a medical source that [a claimant is] 'disabled' or 'unable to work' does not mean that [the agency] will determine that [the claimant is] disabled." *Id.*

The ALJ uses a five-step, sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4);

*Winschel*, 631 F.3d at 1178.   This process includes an analysis of whether the claimant: (1) is able to engage in substantial gainful activity; (2) has a severe physical or mental impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform past relevant work, in light of his residual functional capacity (RFC); and (5) can perform other work available in the national economy given the claimant's RFC, age, education, and work experience.  20 C.F.R. § 404.1520(a)(4).  If an ALJ finds a claimant disabled or not disabled at any given step, the ALJ does not proceed to the next step.  20 C.F.R. § 404.1520(a)(4).  For DIB claims, a claimant is eligible for benefits where he demonstrates disability on or before the last date for which he was insured.  42 U.S.C. § 423(a)(1)(A); *see also Moore*, 405 F.3d at 1211.

For claims, like Plier's, which were filed before March 27, 2017, federal regulations required an ALJ to give more weight to medical opinions from medical sources who examined or treated a claimant, than to sources who had not.  20 C.F.R. § 404.1527(c)(1)–(2).  When assessing medical opinions, the ALJ must consider several factors to determine how much weight to give each medical opinion, including whether the physician has examined the claimant; the length, nature, and extent of a treating physician's relationship with the claimant; the medical evidence and explanation supporting the physician's opinion; how consistent the physician's opinion is with the "record as a whole"; and the physician's specialty.  20 C.F.R. § 404.1527(c).

The ALJ must give the medical opinions of treating physicians substantial or considerable weight unless good cause is shown to the contrary. *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1259 (11th Cir. 2019) (per curiam). "Good cause exists when (1) the treating physician's opinion was not bolstered by the evidence, (2) the evidence supported a contrary finding, or (3) the treating physician's opinion was conclusory or inconsistent with his or her own medical records." *Id.* "[T]he ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician. The failure to do so is reversible error." *Id.* (citations omitted).

The ALJ cannot reject a physician's opinion because it is not in a particular format. *See id.* at 1261. However, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam).

We have acknowledged that remands are required when an ALJ fails to consider properly a claimant's condition despite evidence in the record of the diagnosis. *See Vega v. Comm'r of Soc. Sec.*, 265 F.3d 1214, 1219–20 (11th Cir. 2001). However, Vega preserved this argument on appeal. *Id.* at 1217–20.

As a general rule, however, we "will not address an argument that has not been raised in the district court." *Stewart v. Dep't of Health and Hum. Servs.*, 26 F.3d 115, 115 (11th Cir. 1994). This rule also applies where a claimant did not raise an argument during administrative proceedings. *See Wheeler v. Heckler*, 784 F.2d 1073, 1077 (11th Cir. 1986) (declining to consider an argument in a Social

Security appeal where "exhaustive review of the record reveals that this issue was not raised at either the administrative proceedings or the district court").

Here, good cause existed for the ALJ's decision to discount Dr. Goyal's opinion form. Namely, Dr. Goyal's form was conclusory and unexplained, as it only listed that Plier would miss four days a month without anything further. *See Schink*, 935 F.3d at 1259. Additionally, Dr. Goyal's medical evidence showed relatively conservative treatments keeping Plier's symptoms under control, which contradicted his opinion evidence stating that Plier would miss four days of work per month. *See id.* Further, because the medical evidence in the record contradicted Dr. Goyal's opinion, the ALJ was free to reject that opinion. *See Sryock*, 764 F.2d at 835.

Finally, although Plier now argues that the ALJ ignored his syncope symptoms, he did not preserve this issue. Thus, we will not consider it and it is unnecessary for us to decide whether the medical record supports the ALJ's finding that his syncope was resolved. *See Stewart*, 26 F.3d at 115. This rule also applies because Plier did not raise the argument during the administrative proceedings. *See Wheeler*, 784 F.2d at 1077.

### III.

After considering a claimant's complaints of pain, the ALJ may reject them as not credible, which will be reviewed for substantial evidence. *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) (per curiam). The ALJ must articulate specific reasons if the

ALJ discredits such testimony and the testimony is critical. *Id.* The credibility determination does not need to cite particular phrases or formulations, but it cannot merely be a broad rejection that does not allow us to conclude that the ALJ considered a claimant's medical condition as a whole. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

A claimant's subjective testimony of pain and other symptoms can establish a finding of disability only if the medical evidence supports it. *Id.* The claimant must show evidence of an underlying medical condition and either objective medical evidence that confirms the severity of the alleged symptoms or the objectively determined medical condition must be severe enough that it could reasonably be expected to give rise to the alleged symptoms. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Once this is established, the ALJ then evaluates the intensity and persistence of a claimant's alleged symptoms and their effect on his ability to work. 20 C.F.R. § 404.1529(c). When evaluating the extent to which a claimant's symptoms affect his capacity to perform basic work activities, the ALJ considers (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the symptoms; (3) precipitating aggravating factors; (4) the type, dosage, effectiveness, and side effects of medication taken to alleviate symptoms; (5) treatment other than medication; (6) any measures used to relieve symptoms; (7) other factors concerning functional limitations and restrictions due to symptoms; and (8) inconsistencies between the evidence and subjective statements. *Id.* §§ 404.1529(c)(3), (4).

Here, substantial evidence supported the ALJ's decision to discredit Plier's testimony regarding his daily activities. In making the credibility determination, the ALJ referenced both the medical record and the function reports for determining that Plier could perform light work. *See* 20 C.F.R. §§ 404.1259(c)(3), (4). Additionally, while he did complain of various symptoms associated with his impairments during the hearings, subjective complaints alone are not sufficient to establish disability and doctors treated his impairments conservatively—primarily with medication. *See Holt*, 921 F.2d at 1223; *see also* 20 C.F.R. § 404.159(c)(4). Further, those conservative treatments and the statements in the function reports showing Plier's daily activity are inconsistent with his subjective testimony. *See* 20 C.F.R. § 404.159(c)(4).

As for Plier's arguments about the ALJ potentially misinterpreting an additional report by Dr. Robert Storjohann, Plier did not raise those arguments in the proceedings below, so we will not consider them. *See Stewart*, 26 F.3d at 115; *Wheeler*, 784 F.2d at 1077.

## IV.

While an ALJ may consider the level or frequency of treatment when evaluating the severity of a claimant's conditions, an ALJ cannot draw any inferences about an individual's symptoms and their functional effects from a failure to seek medical treatment without first considering any explanations that the individual may provide. *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267–68 (11th Cir. 2015) (per curiam). When an ALJ primarily, if not exclusively, relies on the lack of seeking treatment and the ALJ does not

consider any good cause explanation for the claimant's failure to seek treatment, we will remand for additional consideration. *Id.* at 1268. "However, if the ALJ's determination is also based on other factors, such as RFC, age, educational background, work experience, or ability to work despite the alleged disability, then no reversible error exists." *Id.*

Here, the ALJ did not primarily rely on Plier's lack of specialized mental health treatment to deny his DIB claim. While the ALJ acknowledged that Plier did not seek further mental health treatment, that was only one sentence of the opinion denying benefits. Instead, the ALJ looked at the medical record, the consistent treatment by Dr. Swearingen, and the conservative nature of those treatments, which shows that the ALJ relied on factors other than the lack of mental health treatment to make the determination. *See Henry*, 802 F.3d at 1268. Further, Plier's physicians never recommended anything more than medication to treat his mental health conditions, those medications appeared to be effective, and his mental health status examinations were by and large normal.

## V.

Accordingly, for the reasons discussed above, we affirm the District Court's judgment affirming the SSA's denial of Plier's application for disability insurance benefits.

**AFFIRMED.**